The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Good morning. We're pleased to have with us on the bench today Judge Jose Linares of the District Court, United States District Court for the District of New Jersey, who is sitting by designation of the Chief Justice. We appreciate his help. Our first case this morning is 06-3290, Wills v. United States Postal Service. Mr. Notary. Good morning. May it please the court. This matter is before the court on the petition of Mr. Larry Wills. And basically I ask the court to consider the threshold question. Why did this train leave the station?  It is our belief, as identified in RA 53 specifically, the notice of proposed adverse action should be the starting point of this inquiry. As the court will note, there were a number of specifications, specifications 1 through 7. Of particular significance is specification 1 and 3. Did the conduct arising from the August 20th, 2003 meeting with NALC Vice President Ron Pinillo constitute protective activity? And if such, should it have been a subject of interdisciplinary action? It is the contention of the appellant that the activity involved in the August 20th, 2003 NALC Vice President meeting with Pinillo was indeed protective activity. And what is the basis? What does protective activity mean? What is the basis of the statute? And what we had identified in our brief at pages 11, we contend that this was one, a grievance meeting. Two, by its very definition under page 12, article 15.1, a grievance is defined as a dispute, difference, disagreement, or complaint between the parties related to which hours and conditions of performance. Well, let me ask you, I'm a little confused about that. I understand the MSPB decided no, this was not a grievance meeting in their story. That is correct. But let me ask you, I'm a little confused why you can reach that issue because your client here, the appellant, was the supervisor. He was the deciding official in this grievance meeting, correct? He wasn't the employee. I'm the employee of this grievance meeting, right? That's correct. And it seems to me that there's some protection that somebody is entitled to if it's a grievance, even assuming it's a grievance meeting, that person who is entitled to protection is the grievant, the employee, not the person conducting the meeting. And your client isn't even covered by the collective bargaining agreement, is he? Isn't he a supervisor or a manager? He's a supervisor, a manager, or an employee. So if there's some protection, even assuming it was a grievance meeting, if there's some protections that would incur to someone based on the collective bargaining agreement, those protections are the employees, not the supervisor, as I would understand. As the administrative law judge, and there is no court that has cited on point whereby a supervisor or a managerial employee has subsequently been disciplined because of their conduct inside of a grievance meeting. And what we highlight on page 18 of our brief, whatever was said in the meeting, let's look at this. So, counsel, isn't our standard review here, whether or not the decision was supported by substantial evidence? Yes. Did we take specification number one of the equation for a minute? The train never would have left the station. Why not? Why isn't there on this record alone, without specification number one, taking aside what your client may have said during that meeting, which is what you take issue with, right? You state this during the meeting. Yes, you always do. If you take those statements out of the equation and you keep the testimony of the other witnesses, the investigations that were done, and all of the other factors, why isn't there substantial evidence to affirm just on that? But without having to deal with specification number one. And Judge Linares, I think that this becomes a completely different case because we believe that the case never would have been brought in the first place. We believe also with respect to the other specification, it is conduct four and five years prior to this incident. What the agency did, they attempted to power on additional allegation after what happened in this meeting. And what we're saying here, there is nothing in this record that would happen in the August 20th, 2003 meeting, rising to a level of flagrant conduct, abuse and beyond, flagrant conduct on the part of Mr. Wills. The specifications three, specifications two, approximately four years ago, specification five, April 25, 2002. On August five, specification August five, 2002. Then, a settlement agreement had been reached on May of 1998, basically restoring Mr. Wills back. But what the agency did, the postal service did, and I agree with you, cumulative, they brought a lot of charges that they had already dealt with. In the stipulation of that settlement in 98, they indicated that he could be cited in any subsequent action involving the petition in September 1998. That's correct. So why was it incorrect in taking into consideration in making the decision to do so? The point that I'm driving home is, I don't believe, and the appellant does not believe, that he would have ever been charged but for his statements from the office. That's correct. The question is this, is still, if that was when the train left the station, was his conduct, should specification one and three have been sustained? Should it have been sustained? And the question, I think, for this tribunal, assuming arguendo that it should have been sustained, then you affirm. But clearly, if he was involved with protected activity within the August meeting, that eliminates specifications one and three. And at a minimum, he ought to be entitled to a remand. And this demotion would have been unwarranted. What do you say then about the finding that, below that, your client did not have a rational basis to believe that he was engaged in protected activity because none of the procedural underpinnings of Formal Step A procedure had taken place. So therefore, he had no basis to believe he was involved with protected activity. And moreover, therein in law, it says that anything that you say to him, that hearing, even if it was a Formal A hearing, Formal Step A hearing, could not be used against him in determining maybe punishment for the man. Clearly, the reason they were in this meeting was because of a complaint of Mr. Woodard. Mr. Woodard had complained about what he had thought was harassing behavior. Clearly, Mr. Woodard's complaint was brought to management attention in a timely manner. Clearly, this meeting was held within minutes. Clearly, Mr. Woodard was being represented by Mr. Conneal, the NACL Branch 2 Vice President. The alleged harassment behavior could have been adjudicated in several ways. He could have filed a grievance for the article. And a grievance does not necessarily have to be, and I'm citing directly from the brief, pages 17 and 18, a grievance does not necessarily have to be in writing. It could be formal or informal. So, this meeting had all of the requisite characteristics that are indicial of a grievance meeting. Wait, wait, wait. I thought that the Formal Step A grievance, I agree with you that that's the Informal Step A. You don't allege that's what was happening here. Your position is that this was a Formal Step A grievance where there was a representative present and so forth. For a formal, the way I would see, for a Formal Step A grievance, there hasn't been a written appeal. There is a written request there, I know that. Yes, that's correct. And I think also that nowhere in the AALJ's decision did the AALJ address any legal authority whatsoever. And I hear what this court is saying today. This is for the protection of the employee. It is not for the protection of the employer, the management. But all of the legal authority, the same test for misuse and abuse, misconduct, it has to be formal. There was no activity in this meeting by Mr. Wills of violence. There was no profanity. They talked about the tone of the voice, and as you know, that's a subjective criteria. There was no evidence in this record that the meeting had to be aborted because of some sort of misconduct or impulsive behavior on the part of Mr. Wills. And whatever was going on in this meeting, it's give and take. Give and take. If Mr. Wills had used profanity in the meeting, if he had said something offensive, should he have been disciplined or subjected to discipline for that? We think not. We think that what's good for the goose is good for the gander, and at the end of the day, that protected activity in trying to resolve the dispute and to penalize him subsequently, it seems to be a very dangerous precedence. Thank you. Thank you. Thank you very much. Does the government agree that if... ...construed as an actual formal grievance meeting that you've got a problem, that the appellant would be covered by the protection of the collective bargaining agreement not to use any of those statements? No, Your Honor. Totally disagree. And the reason is, as Your Honor observed in Petitioner's argument, the protections in this case of the National Labor Relations Act that applies to postal service as opposed to the Federal Labor Relations Authority decision. In that case, the protections flow to the representative of the workforce of the labor organization. Is the appellant a member of the collective bargaining agreement or covered by the collective bargaining agreement? No, Your Honor. He's a supervisor of Postmaster. Did the government ever make this argument in any of the proceedings below? In this case? Yes. That... ...a formal level A grievance meeting, it wouldn't affect the result here because the appellant is not covered by the protections of the NLRA or the collective bargaining agreement. In the written record, Your Honor, I don't see any pardon to that effect. However, it may very well come up in the hearing. Unfortunately, Mr. Wills hasn't provided the transcript of the hearing, and so we have no record. Well, the government was in this proceeding. That's right. Right. And so, if you don't know, the answer has to be no. We have to assume that it wasn't written. You're not... You can't show me anywhere. I can't point to any specific right. The issue seemed to turn on whether or not it was a grievance meeting. And the administrative judge, as a matter of factual findings, found that it wasn't. So, no doubt, there's no question that he was... that his position was not covered. Well, that's right, Your Honor. If we were to assume it was a grievance meeting, then the posture of the parties would have been Mr. Woodard as the... for the Bargain Unit and the Letter Carriers being the steward, and Mr. Wills representing management. And so, it didn't have to come up in the first place. It simply wasn't a grievance meeting. And if it were, the parties were not in a posture that Mr. Wills could rely on at this point. It's just an absurd situation. No, even if Mr. Wills were acting as the management representative in a grievance meeting, no reasonable management representative could compound the grievance that was being discussed  and demeaning statements. It's just... it's just absurd. The... and as a matter of fact, then, the administrative judge found that it doesn't apply, that protected activity notion goes out the window. And as to where the disciplinary action originated, the record contains several fact-finding reports, one that was conducted in July of 2003 that predated this meeting in August of 2003 with Mr. Waters and Mr. Wilson and Mr. Kenia. And that, in turn, led to further fact-finding investigations. Another one that was begun in December of 2003. In both of those fact-finding investigations, statements were taken from the workforce, from other employees. And those are in the record as well. And those underlie the other specifications besides the ones that... well, I'm sorry, besides the one about the August 2003 meeting. And so that constitutes substantial evidence that would support administrative judges' upholding of the charge and each of the four specifications that were upheld. Really, the issue in this case is whether the postal service was entitled to take an employee out of a supervisory position where he engages in misconduct against subordinates. And so the finding by the administrative judge that not only was the charge correct to be sustained and the misconduct was severe enough and all the other some of those factors that the administrative judge considered independently. We believe that this court should affirm in MSBD's finding that the penalty of demotion was a proper one. If the court has no further questions, we ask for affirmation. Thank you. Thank you. I think that I asked this court, and I've seen some of these opinions, in particular this MSDB opinion. There is nowhere in the opinion from pages 2 through 7 that the MSDB deals with this issue of Mr. Wheel's conduct in the August 20th meeting. Clearly, specification 1 and 3 asserts that whatever he did on August 20th, it was inappropriate and should be subject to discipline, including discharge. There is nowhere in the appellee's brief of any addressing of Mr. Wheel's conduct in the August 20th meeting as it relates to whether that conduct was protected or not. And it's eliminated. Nowhere in he brings up the issue of his activity and his conduct in the August 20th meeting at the administrative law judge hearing. There is not one legal authority issued from pages 2 through 7 that the conduct you engaged in was not legally protected. There is a lot of testimony and finding, but in fact, are you going to hold a managerial employee to some standard as to whatever you say in a meeting with a union official will subsequently become part of a disciplinary process? Now, I know this court in minutes' time will issue out an opinion and simply say, we affirm the decision of MSPB. But I submit to this court, when looking at the language of the decision from pages 2 through 7, there is nothing addressing the standards, whether he violated any standards, whether he did something wrong. He is in a give and take. He is in a negotiation session, so to speak, with a union representative and an employee. And his tone of voice, his conduct, how he responds in that meeting subsequently becomes a paramount issue and a discharge. There's something wrong with that issue. There's something wrong with the government nor the administrative law judge says this is the legal authority that I'm relying upon. Clearly, all of the ingredients of a grievance, a complaint, meeting with a vice president of a union on behalf of a worker, it has all those ingredients. And to time Mr. Wills in this fashion and not give him any legal authority for this is fundamentally, we believe, unfair. Thank you. Case is submitted.